**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| PATRIOT COAL CORPORATION, *et al.*,[1] | ) ) ) | Case No. 12-51502.659 |
| Debtors. | ) ) ) | (Jointly Administered) |
| EUGENE DAVIS, solely in his capacity as Liquidating Trustee for the PCC Liquidating Trust, | ) ) ) ) ) | Adversary Proceeding No. _____ |
| Plaintiff, | ) ) | |
| v. | ) ) ) | |
| WEST VIRGINIA STATE TAX DEPARTMENT, | ) ) ) | |
| Defendant. | ) | |

**COMPLAINT FOR TURNOVER OF TAX REFUNDS OWED TO PATRIOT COAL CORPORATION, PANTHER, LLC, COYOTE COAL COMPANY, AND CATENARY COAL COMPANY**

Plaintiff Eugene Davis, solely in his capacity as Liquidating Trustee (the "Liquidating Trustee" or "Plaintiff") for the PCC Liquidating Trust (the "Trust"), files this complaint for turnover against Defendant West Virginia State Tax Department (the "W.V. Tax Department"). In support thereof, Plaintiff alleges as follows:

**Preliminary Statement**

1. The W.V. Tax Department owes the Trust, as successor-in-interest to Patriot Coal Corporation ("Patriot"), Panther, LLC ("Panther"), Catenary Coal Company ("Catenary"), and

---

[1]  Because of the numerous entities so captioned, the full list of debtors in these chapter 11 cases are omitted from this Motion, but the captioned debtors (collectively, the "Patriot I Debtors") include those identified in the *Order Directing the Joint Administration of the Debtors' Chapter 11 Cases*, Case No. 12-51502 (KAS) [Docket No. 30].

Coyote Coal Company ("Coyote," and together with Patriot, Panther, and Catenary, the "Tax Refund Debtors") at least $5,325,826.83 in tax refunds and interest.

2. Although both the Plaintiff and the Tax Refund Debtors have repeatedly requested the payment of these refunds, the W.V. Tax Department has refused to turn over the tax refunds and interest that are due and owing to the Plaintiff.

## The Parties

3. On July 9, 2012, Patriot and certain of its direct and indirect subsidiaries (collectively, the "Patriot I Debtors") commenced voluntary cases under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Patriot I Cases"). On December 19, 2012, the United States Bankruptcy Court for the Southern District of New York entered an order transferring the Debtors' Chapter 11 cases to the United States Bankruptcy Court for the Eastern District of Missouri, Eastern Division. By order dated December 18, 2013, this Court confirmed Patriot's Chapter 11 plan in the Patriot I Cases.

4. On May 12, 2015, Patriot and certain of its direct and indirect subsidiaries (collectively, the "Patriot II Debtors")[2] commenced voluntary cases under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Virginia (collectively, the "Patriot II Cases"). On October 9, 2015, the United States Bankruptcy Court for the Eastern District of Virginia confirmed the *Debtors' Fourth Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* (the "Plan"), which, as modified, was attached as Exhibit A to the order confirming the Plan [Va. Bk. Dkt. No. 1615] (the "Confirmation Order"). Pursuant to the Plan, the Liquidating Trust Assets (as defined in the

---

[2] A full list of the Patriot II Debtors is included in the *Order Granting Motion for Joint Administration*, Case No. 15-32450 (KLP) [Docket No. 48].

2

KE 45458861

Plan), including this cause of action, vested in the PCC Liquidating Trust on October 26, 2016. The Plaintiff is the duly appointed Liquidating Trustee for the PCC Liquidating Trust.

5.  On May 12, 2016, the Liquidating Trustee filed an adversary proceeding against the W.V. Tax Department in the Eastern District of Virginia Richmond Division. The W.V. Tax Department moved to dismiss on two grounds: (1) the Virginia Bankruptcy Court lacked jurisdiction to adjudicate the dispute due to sovereign immunity; and (2) the Virginia Bankruptcy Court should abstain from hearing the dispute pursuant to 28 U.S.C. § 1334(c)(1).

Though the Virginia Bankruptcy Court granted the motion to dismiss on grounds of sovereign immunity, it also stated the following:

> The Enforcement Motion[3] filed in the Missouri Bankruptcy Court specifically sought clarification and enforcement of the terms of the Settlement Agreement for the sole purpose of recovering the same tax refunds Catenary, Coyote, and Panther are now attempting to recover in the instant proceeding. In its Response to the Enforcement Motion, the Tax Department raised similar defenses as those that are now being asserted and demanded "strict proof of the refunds claimed by Patriot Coal . . . ." The Tax Department not only acquiesced to the bankruptcy court's jurisdiction to determine whether it must issue the tax refunds but specifically acknowledged that "jurisdiction before the Bankruptcy Court for the Eastern District of Missouri is proper . . . ." By filing proofs of claim and thereafter acknowledging that jurisdiction was proper before the Missouri Bankruptcy Court, the Tax Department waived sovereign immunity in the Prior Cases. . . .
>
> While it may be argued that the Tax Department has waived sovereign immunity in this proceeding through its actions in the [Patriot I Cases], that would likely not be an issue were this matter to be brought before the Missouri Bankruptcy Court. This Court's decision is not intended to bar the Debtors from petitioning the Missouri Bankruptcy Court to reopen the Prior Cases pursuant to 11 U.S.C. § 350(b) in order to seek appropriate relief that may, or may not, be available in that court.

---

[3] As discussed *infra*, the W.V. Tax Department filed proofs of claim against fifteen of the Patriot I Debtors. The Patriot I Debtors subsequently entered into a Claim Settlement and Release Agreement (the "Claim Settlement") with the W.V. Tax Department that resolved those proofs of claim. Three of the Patriot I Debtors (Catenary, Coyote, and Panther) subsequently filed a motion to enforce the settlement agreement in the Missouri Bankruptcy Court and obtain certain tax refunds. The W. V. Tax Department submitted a response to the motion to enforce wherein it conceded that the Claim Settlement did not preclude issuing the refunds but disputed the amounts that were due. In response, the Patriot I Debtors withdrew the motion to enforce.

3

The Virginia Bankruptcy Court also stated that it likely would not abstain from hearing the dispute, asserting that "[w]ere jurisdiction to exist, . . . the submissions of the parties suggest that the factors the Court would consider in determining whether to exercise its discretion to abstain, including the apparent lack of progress in the appropriate state forums, would likely lead to retention."

6.  Defendant, the W.V. Tax Department, is a state agency for the state of West Virginia and is located at 1206 Quarrier Street, Charleston, West Virginia 25301.

## Jurisdiction and Venue

7.  This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334(b) because it arises in and is related to the Patriot I Cases.

8.  Pursuant to the Amended Confirmation Order entered in the Patriot I Cases, this Court retained jurisdiction to hear and determine (a) all matters arising out of and related to the Chapter 11 Cases and the Plan; (b) any motion, adversary proceeding, application, contested matter or other litigated matter pending on or commenced after the Confirmation Date; (c) matters concerning state, local and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code (including the expedited determination of tax under Section 505(b) of the Bankruptcy Code); (d) any disputes relating to the Claim Settlement; (e) disputes arising in connection with the interpretation, implementation or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby or any agreement, instrument or other document governing or relating to any of the foregoing; (f) any other matters related to the Plan and not inconsistent with the Bankruptcy Code; (g) any other matters that may arise in connection with or are related to the Plan, the Disclosure Statement, the Approval Order, the Confirmation Order, any of the Plan Documents or any other contract,

4

instrument, release or other agreement or document related to the Plan, the Disclosure Statement or the Plan Supplements; (h) to recover all assets of the Debtors and property of the Debtors' Estates, which shall be for the benefit of the Reorganized Debtors, wherever located; (i) any rights, Claims or Causes of Action held by or accruing to the Debtors or the Reorganized Debtors pursuant to the Bankruptcy Code or pursuant to any federal or state statute or legal theory; and (j) any other matters not inconsistent with the Bankruptcy Code. *Amended Order Confirming Debtors' Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code* ¶¶ 84(b), (h), (l), (m), (n), (o), (u), (v) [Mo. Bk. Dkt. No. 5169].

9. Venue is proper before this Court pursuant to 28 U.S.C. § 1409(a).

10. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

11. The Plaintiff confirms its consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the United States Bankruptcy Court for the Eastern District of Missouri (the "Court") in connection with this complaint to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## Relief Requested

12. Pursuant to section 542 of Title 11 of the United States Code, Plaintiff seeks the turnover of at least $5,325,826.83 (inclusive of interest).

## Statement of Facts

### A.    The Debtors Filed for Bankruptcy in 2012.

13. In connection with the Patriot I Cases, the W.V. Tax Department filed proofs of claim against fifteen entities:

    (i)    Patriot;

5

    (ii)    Catenary;

    (iii)    Coyote;

    (iv)    Panther;

    (v)    Infinity Coal Sales, LLC;

    (vi)    Rivers Edge Mining, Inc.;

    (vii)    Apogee Coal Company, LLC;

    (viii)    Colony Bay Coal Company;

    (ix)    Wildcat, LLC;

    (x)    Black Stallion Coal Company, Inc.;

    (xi)    Hobet Mining, Inc.;

    (xii)    Jupiter Holdings, LLC;

    (xiii)    Kanawha Eagle Coal, LLC;

    (xiv)    Remington, LLC; and

    (xv)    Robin Land Company, Inc.

(Collectively, the "Proofs of Claim").

    **B.**    **The W.V. Tax Department Settled its Tax Claims.**

    14.    On November 4, 2013, each individual debtor from the Patriot I Cases entered into the Claim Settlement with the W.V. Tax Department.

    15.    The Claim Settlement resolved all claims and demands that the W.V. Tax Department asserted against the fifteen debtor entities, including those asserted in the Proofs of Claim.

6

  **C. The W.V. Tax Department Owes the Tax Refund Debtors at Least $5,325,826.83.**

  16. The W.V. Tax Department is currently in possession of at least $5,325,826.83 in tax refunds that are due and owing to the Liquidating Trust, as successor-in-interest to the Tax Refund Debtors, but that it refuses to turn over.

  17. *First*, the W.V. Tax Department owes the Liquidating Trust, as successor-in-interest to Panther, a severance tax refund for tax year 2012. Panther initially paid estimated taxes for the tax year 2012 using a 2% "thin seam" severance tax rate. Panther then filed an amended tax return using a 1% rate, which it was authorized to use pursuant to Code § 11-13A-3(f). In 2013, Panther requested a $2,371,177 tax refund based on a reduction of its thin seam severance tax rate from 2% to 1%. In an October 28, 2014 letter, the W.V. Tax Department improperly denied this request. On December 19, 2014, Panther appealed the W.V. Tax Department's denial. Less than a month later, the W.V. Tax Department's geologist conducted a survey of Panther's mine. Based on this survey, the W.V. Tax Department's geologist concluded that Panther's deduction was appropriate and Panther's request should be accepted as submitted. Inclusive of interest, the W.V. Tax Department is now in possession of at least $3,116,960.56 in tax refunds that have been properly requested and are due and owing to the Liquidating Trust.

  18. *Second*, the W.V. Tax Department owes the Liquidating Trust, as successor-in-interest to Catenary, a severance tax refund for tax year 2011. Catenary initially paid estimated taxes for the tax year 2011 using a regular 5% severance tax rate. Catenary subsequently filed an amended severance tax return for tax year 2011 using a 2% thin seam rate, which resulted in a refund. After repeated requests, the W.V. Tax Department approved Catenary's tax refund. But the W.V. Tax Department now alleges that it is entitled to setoff the tax refunds against outstanding taxes owed prior to the Patriot I Cases. The W.V. Tax Department never informed

7

Catenary of this setoff prior to the Patriot I Cases or during negotiations of the Claim Settlement. Inclusive of interest, the W.V. Tax Department is now in possession of at least $1,311,498.11 in tax refunds that have been properly requested and are due and owing to the Liquidating Trust.

19.    ***Third***, the W.V. Tax Department owes the Liquidating Trust, as successor-in-interest to Coyote, a severance tax refund for tax year 2012. Coyote initially paid estimated taxes for tax year 2012 using a regular 5% severance tax rate. Coyote subsequently filed an amended severance tax return for tax year 2012 that used a 2% thin seam rate, which resulted in a refund. The W.V. Tax Department informed Coyote that it is not owed these taxes because it did not elect either a refund or a credit with respect to its 2012 taxes. Coyote has since repeatedly requested a refund and received confirmation that its tax filing was complete. Inclusive of interest, the W.V. Tax Department is now in possession of at least $373,732.27 in tax refunds that have been properly requested and are due and owing to the Liquidating Trust.

20.    ***Finally***, the W.V. Tax Department owes the Liquidating Trust, as successor-in-interest to Patriot, a business franchise tax refund for tax year 2014 because Patriot overpaid its requisite tax. The W.V. Tax Department has acknowledged that Patriot has a valid refund claim, but has asserted that it is entitled to set the tax refund off against taxes owing under the Claim Settlement. Inclusive of interest, the W.V. Tax Department is now in possession of at least $523,635.89 in tax refunds that have been properly requested and are due and owing to the Liquidating Trust.

21.    In total, the W.V. Tax Department owes the the Liquidating Trust, as successor-in-interest to the Tax Refund Debtors at least $5,325,826.83 in tax refunds and interest. Each of these tax refunds has been properly requested by the Tax Refund Debtors and the Plaintiff.

8

    **D.**    **The W.V. Tax Department Refuses to Refund the Amounts Due and Owing to the Tax Refund Plaintiffs.**

22. Beginning in March 2014, representatives of the Tax Refund Debtors continuously requested that the W.V. Tax Department pay the tax refunds. The W.V. Tax Department refused each demand, claiming that it "relied on, and based its agreement, in part, on the understanding that the [Claim Settlement] resolved and released any and all outstanding claims of all parties, absent specific language to the contrary in the Agreement."

23. In light of this refusal, Panther, Catenary, and Coyote filed a motion asking this Court to enforce the Claim Settlement against the W.V. Tax Department. In support thereof, Panther, Catenary, and Coyote noted that the release in the Claim Settlement was a "standard one-way release" that did not contain any provisions "resolving or releasing claims by the Debtors against the W.V. Tax Department." In its response, the W.V. Tax Department conceded that the Claim Settlement "does not preclude issuing such refunds," which allowed Panther, Catenary, and Coyote to withdraw its motion to enforce.

24. In subsequent communications between representatives for the Tax Refund Debtors and the W.V. Tax Department, the Tax Refund Debtors have repeatedly requested the payment of at least $5,325,826.83 in tax refunds that are due and owing. The W.V. Tax Department has either refused or ignored each of these requests.

## Count I: Turnover of Tax Refund

25. Plaintiff hereby repeats and realleges each of the above paragraphs as though fully set forth herein.

26. Panther's coal severance tax refund constitutes property of Panther's estate under Section 541 of the Bankruptcy Code that is due and owing and in the possession of the W.V. Tax

9

Department. It is therefore subject to turnover pursuant to Section 542 of the Bankruptcy Code and Bankruptcy Rule 7001.

27. Patriot's franchise tax refund constitutes property of Patriot's estate under Section 541 of the Bankruptcy Code. It therefore is subject to turnover pursuant to Section 542 of the Bankruptcy Code and Bankruptcy Rule 7001.

28. Catenary's coal severance tax refund constitutes property of Catenary's estate under Section 541 of the Bankruptcy Code. It is therefore subject to turnover pursuant to Section 542 of the Bankruptcy Code and Bankruptcy Rule 7001.

29. Coyote's coal severance tax refund constitutes property of Coyote's estate under Section 541 of the Bankruptcy Code. It is therefore subject to turnover pursuant to Section 542 of the Bankruptcy Code and Bankruptcy Rule 7001.

30. All tax refunds previously due to the Tax Refund Debtors are now due and payable to the Liquidating Trust as successor in interest.

WHEREFORE, Plaintiff respectfully requests judgment in its favor and against the W.V. Tax Department requiring the turnover of the following tax refunds:

    a) A tax refund of at least $3,116,960.56 due to the Liquidating Trust, as successor-in-interest to Panther;

    b) A tax refund of at least $523,635.89 due to the Liquidating Trust, as successor-in-interest to Patriot;

    c) A tax refund of at least $1,311,498.11 due to the Liquidating Trust, as successor-in-interest to Catenary; and

    d) A tax refund of at least $373,732.27 due to the Liquidating Trust, as successor-in-interest to Coyote.

Dated: February 8, 2017                      Respectfully submitted,

*/s/ Robert E. Eggmann*
Robert E. Eggmann (#37374 MO)
Thomas H. Riske (#61838 MO)
**CARMODY MACDONALD P.C.**
120 S. Central Ave., Suite 1800
Clayton, Missouri 63105
Telephone: (314) 854-8600
Facsimile: (314) 854-8660

- and -

Stephen E. Hessler (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

-and-

Stephen C. Hackney
William E. Arnault (*pro hac vice* pending)
Nathan S. Gimpel
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Counsel for the PCC Liquidating Trust*

KE 45458861