UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| PATRIOT COAL CORPORATION, | ) | Case No. 12-51502-659 |
| | ) | Judge Kathy A. Surratt-States |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |
| EUGENE DAVIS, solely in his capacity as | ) | **Adversary No. 17-4021-659** |
| Liquidating Trustee for the PCC Liquidating | ) | |
| Trust, | ) | |
| Plaintiff, | ) | **PUBLISHED** |
| | ) | |
| -v- | ) | |
| | ) | |
| WEST VIRGINIA STATE TAX DEPARTMENT, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## <u>O R D E R</u>

The matter before the Court is West Virginia State Tax Department's Motion for Summary Judgment, West Virginia State Tax Department's Memorandum in Support of Motion for Summary Judgment, West Virginia State Tax Department's Statement of Uncontroverted Material Facts, Plaintiff Eugene Davis' [sic] Motion for Summary Judgment, Memorandum of Law in Support of Plaintiff Eugene Davis' [sic] Motion for Summary Judgment, West Virginia State Tax Department's Response to Plaintiff's Statement of Material Facts, West Virginia State Tax Department's Objection to Plaintiff's Motion for Summary Judgment, Plaintiff Eugene Davis' [sic] Response in Opposition to Defendant West Virginia State Tax Department's Motion for Summary Judgment, Plaintiff's Response to the West Virginia State Tax Department's Statement of Material Facts, West Virginia State Tax Department's Reply in Support of its Motion for Summary Judgment, Plaintiff's Reply in Support of Motion for Summary Judgment and West Virginia State Tax Department's Surreply in Further Opposition to Plaintiff's Motion for Summary Judgment. Upon consideration of the record as a whole, the Court makes the following **FINDINGS OF FACT:**

On July 9, 2012, Patriot Coal Corporation and a number of its affiliates (hereinafter "Debtors") filed Voluntary Petitions for relief under Chapter 11 of the Bankruptcy Code (hereinafter "First Bankruptcy Cases") in the United States Bankruptcy Court for the Southern District of New York (hereinafter "New York Bankruptcy Court"). On December 19, 2012, the First Bankruptcy Cases were transferred to the United States Bankruptcy Court for the Eastern District of Missouri following the New York Bankruptcy Court's Memorandum Decision entered on November 27, 2012, which instructed that the cases would be transferred. This Court confirmed Debtors' Joint Plan of Reorganization (hereinafter "First Plan of Reorganization") in the First Bankruptcy Cases on December 18, 2013. On May 12, 2015, Debtors filed Voluntary Petitions for relief under Chapter 11 of the Bankruptcy Code again (hereinafter "Second Bankruptcy Cases") in the United States Bankruptcy Court for the Eastern District of Virginia (hereinafter "Virginia Bankruptcy Court"). The plan of reorganization in the Second Bankruptcy Cases (hereinafter "Second Plan of Reorganization") was confirmed on October 9, 2015. On October 26, 2016, according to the Second Plan of Reorganization, the liquidating trust assets vested in Eugene Davis, the duly appointed Liquidating Trustee (hereinafter "Plaintiff") for the Patriot Coal Corporation Liquidating Trust (hereinafter "Liquidating Trust").

On May 12, 2016, Plaintiff filed an adversary proceeding against the West Virginia State Tax Department (hereinafter "Defendant") in the Virginia Bankruptcy Court (hereinafter "Virginia Adversary"). Plaintiff alleged in the Virginia Adversary that Defendant owed the Liquidating Trust $5,325,826.83 in tax refunds and interest. Defendant filed West Virginia State Tax Department's Motion to Dismiss in the Virginia Adversary (hereinafter "First Motion to Dismiss") based on two grounds: (1) the Virginia Bankruptcy Court lacked jurisdiction to adjudicate the dispute due to sovereign immunity and (2) the Virginia Bankruptcy Court should abstain from hearing the dispute pursuant to 28 U.S.C. § 1334(c)(1). A hearing was held in the Virginia Bankruptcy Court on Defendant's First Motion to Dismiss. On November 22, 2016, the Virginia Bankruptcy Court entered its Memorandum Opinion granting Defendant's First Motion to Dismiss.

On February 8, 2017, Plaintiff filed, in this Court, Complaint for Turnover of Tax Refunds Owed to Patriot Coal Corporation, Panther LLC, Coyote Coal Company and Catenary Coal Company (hereinafter "Complaint") alleging that Defendant owes the Liquidating Trust at least $5,325,826.83. Defendant filed West Virginia State Tax Department's Motion to Dismiss (hereinafter "Second Motion to Dismiss") and argued that Plaintiff was attempting to re-litigate the same turnover action that was dismissed by the Virginia Bankruptcy Court, that the Virginia Bankruptcy Court dismissed the Virginia Adversary for failure to state a claim under Section 542 of the Bankruptcy Code and the ruling was final and binding. Plaintiff argued in response that the Virginia Bankruptcy Court granted Defendant's First Motion to Dismiss because the Virginia Bankruptcy Court lacked jurisdiction to adjudicate the claim on the basis of sovereign immunity, the dismissal was granted without prejudice and the decision of the Virginia Bankruptcy Court was not intended to preclude subsequent litigation in this Court. This Court entered its Order denying Defendant's Second Motion to Dismiss on May 29, 2018.

On June 28, 2018, Defendant filed West Virginia State Tax Department's Motion to Dismiss for Subject-Matter Jurisdiction (hereinafter "Third Motion to Dismiss") in which Defendant argued that the Court lacks subject matter jurisdiction and that the Complaint should be dismissed for violating sovereign immunity. Plaintiff filed Trustee's Response in Opposition to the West Virginia State Tax Department's Motion to Dismiss for Lack of Subject Matter Jurisdiction and argued that the Court does have subject matter jurisdiction over the tax refund claims and that the Complaint does not violate Defendant's sovereign immunity. This Court entered its Order denying Defendant's Third Motion to Dismiss on June 25, 2019.

On December 20, 2019, Defendant filed the West Virginia State Tax Department's Motion for Summary Judgment arguing Plaintiff cannot maintain a Section 542 turnover action against Defendant because none of the purported refund claims are liquidated or undisputed under state law; that most of Plaintiff's purported refund claims are time-barred under West Virginia law; and to the extent Plaintiff could establish that a liquidated and undisputed right to any refund amount

exists on the disputed facts in this case, Defendant has the right to offset any amount against the $10,000,000.00 Debtors still owes Defendant under the parties claim settlement as expressly preserved in the confirmation orders from Patriot's prior Chapter 11 cases (hereinafter "Claim Settlement"). On December 20, 2019, Defendant filed West Virginia State Tax Department's Memorandum in Support of Defendant's Motion for Summary Judgment. Additionally, on December 20, 2019, Defendant filed West Virginia State Tax Department's Statement of Uncontroverted Material Facts. Defendant further argues that Plaintiff failed to file a timely refund request or failed to timely challenge Defendant's decision denying their tax refund request.

On December 20, 2019, Plaintiff filed Plaintiff Eugene Davis' [sic] Motion for Summary Judgment arguing Defendant owes the Liquidating Trustee $6,000,000.00 in tax refunds due to Debtors.  Plaintiff asserts the terms of the Claim Settlement prohibit Defendant from offsetting any amounts that may be due under the Claim Settlement against the refunds due and owing to Plaintiff. On December 20, 2019, Plaintiff also filed Memorandum of Law in Support of Plaintiff Eugene Davis' [sic] Motion for Summary Judgment where Plaintiff argues the right to obtain four outstanding refund claims from Defendant for the following Patriot entities:

| Refund Year | Patriot Entity | Original Refund | Refund Plus Interest |
|---|---|---|---|
| 2011 | Catenary Coal Company | $1,219,083.50 | $1,510,851.98 |
| 2012 | Coyote Coal Company | $750,070.04 | $1,175,512.82 |
| 2012 | Panther LLC | $1,755,463.52 | $2,681,867.31 |
| 2013 | Patriot Coal Corporation | $459,939.00 | $645,502.33 |
| **Total** | | **$4,184,556.06** | **$6,013,734.44** |

Plaintiff argues the tax refunds owed to Catenary Coal Company, Panther LLC, and Coyote Coal Company originate from severance taxes. The tax refund owed to Patriot Coal Corporation originates from a franchise tax. Plaintiff emphasizes the only issue relevant to the Patriot Coal Corporation refund is Defendant's ability to offset it. Defendant requires coal companies to pay tax on the coal they "sever" from the ground and sell.  Coal severance taxes are imposed upon coal producers in the State of West Virginia. Under the West Virginia Tax Procedure and Administration Act, the applicable severance tax rate depends on the width of the seam of coal mined (hereinafter "severance tax rate"). The thinner the seam, the lower the severance tax rate. Although the default

severance tax rate is 5%, coal companies may pay a reduced severance tax rate of 1% or 2% if the seam is thinner (hereinafter "thin seam tax rate"). Each month, a coal company estimates its monthly severance tax liability and pays Defendant that amount. Every calendar year, a coal company files eleven monthly estimates and an annual return. Defendant's geologists are responsible for reviewing and approving isopach maps to ensure a coal company is utilizing the appropriate severance tax rate. *See* Ex. 17, W.Va. Code §11-13A-3(f)(3). Defendant concedes in the numerous pleadings filed with this Court that "on or about January 31, 2012, Catenary Coal Company filed its 2011 annual coal severance tax return;…claimed a refund of $1,219,083.43; and a month later, the Tax Department approved the refund claim." [*See* Boyle Declaration].

As to the purported tax refund due and owing to Coyote Coal Company, Defendant's geologist, in reference to evaluating the Coyote Coal Company isopach map for the thin seam tax rate determination stated, "I passed the Coyote Coal Blue Creek Mine #2 because the maps were excellent and it actually qualified." *See* Doc 73. Ex. 35, Irby Dep. Ex. 14, WVST003933.  That same day, West Virginia Tax Department's geologist sent an internal email to another West Virginia Tax Department employee informing her that Coyote had provided the amended maps and, based upon his review, Coyote's "maps are approved for both years. The new maps really are good." *See* Ex. 36, Hamilton Dep. Ex. 5, WVST003935.

Panther LLC filed their initial 2012 annual coal severance tax return on January 31, 2013, showing total taxes due of $4,742,353.52 and claiming a tax liability of $268,721.16. Panther LLC made a return payment of $268,721.16. On February 25, 2013, Panther LLC filed an amended return showing a total tax due of $2,370,676.76. Defendant asserts that Panther LLC reduced its tax burden by $2,300,000.00 from the initial return by unilaterally claiming entitlement to a reduced tax rate applicable to thin coal seams.

In September 2014, Patriot Coal Company filed a 2013 business franchise tax return. On the return, Patriot Coal Company claimed a tax refund in the amount of $439,939.00 and a tax credit of $20,000.00. *See* Ex. 47, Hartsog Dep. Ex. E, PATRIOT_00007775. Defendant admits

Patriot Coal Company properly requested a refund on the tax return filed in 2014. Plaintiff further asserts that Defendant does not dispute the validity of the Patriot Coal Company tax refund.

On January 21, 2020, Defendant filed West Virginia State Tax Department's Response to Plaintiff's Statement of Material Facts arguing genuine issues of fact exist demonstrating that Plaintiff is not entitled to summary judgment on its turnover claim against Defendant. Also, on January 21, 2020, Plaintiff filed Plaintiff Eugene Davis' [sic] Response in Opposition to Defendant West Virginia State Tax Department's Motion for Summary Judgment and Plaintiff's Response to West Virginia State Tax Department's Statement of Material Facts relying on Defendant's own pleadings, documents, and witness testimony—all of which establish Plaintiff's right to obtain the four tax refunds at issue.

On February 3, 2020, Defendant filed West Virginia State Tax Department's Reply in Support of its Motion for Summary Judgment alleging that Defendant repeatedly informed Plaintiff and Debtors, both before and during this litigation, that Defendant held no such tax refunds and, that until Debtors complied with the necessary statutory requirements and filed cognizable and proper tax refund claims, Debtors would not qualify for the refunds Plaintiff seeks in this suit. Defendant further argues that Plaintiff's refund claims are disputed and unliquidated in both nature and amount and, therefore, not properly the subject of a turnover action under Section 542 of the Bankruptcy Code.

Also, on February 3, 2020, Plaintiff filed Plaintiff's Reply in Support of Motion for Summary Judgment, emphasizing that the uncontroverted evidence shows that (i) Patriot Coal submitted written requests for the tax refunds; (ii) West Virginia State Tax Department was aware Patriot had submitted these tax refund requests; (iii) West Virginia State Tax Department either approved the tax refunds for Catenary Coal Company and Patriot Coal or the severance tax rates resulting in the requested tax refunds for Panther LLC and Coyote Coal Company; and (iv) West Virginia State Tax Department cannot offset the tax refund claims.

On February 10, 2020, Defendant filed West Virginia State Tax Department's Motion for Authority to File a Surreply asking this Court for leave to file a surreply to address the new argument Plaintiff raises in its reply in further support of their motion for summary judgment. *See* Doc. 87. Plaintiff raised an entirely new argument, never before asserted, that Defendant's affirmative decision not to file a proof of claim for Patriot Coal's breach of the Claim Settlement in the Second Bankruptcy Cases precludes Defendant from setting off the refunds against the amounts due under the Claim Settlement. The Court granted Defendant's Motion for Authority to File a Surreply on February 10, 2020. On February 11, 2020, Defendant filed West Virginia State Tax Department's Surreply in Further Opposition to Plaintiff's Motion for Summary Judgment arguing that Plaintiff cites no statutory or judicial authority in support of the proposition and ignores both contrary judicial authority and relevant facts.

## JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding under 28 U.S.C. §§ 151, 157, and 1334 (2017) and Local Rule 89.9-01(B) of the United States District Court for the Eastern District of Missouri.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(E) (2017).  Venue is proper in this district under 28 U.S.C. § 1409(a) (2017).

## CONCLUSIONS OF LAW

Under Rule 56(c) of the Federal Rules of Civil Procedure, as made applicable under Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2550 (1986).  The moving party has the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law.  *Id.* at 323. Once the moving party carries its burden, the burden shifts to the non-movant.  *Id.*  In ruling on a motion for summary judgment, a court must view all the facts in a light most favorable to the non-moving party, and that party must

receive the benefit of all reasonable inference drawn from the facts. *Robinson v, Monaghan*, 864 F.2d 622, 624 (8th Cir. 1989) citing *Trnka v. Elanco Prods. Co.*, 709 F.2d 1223, 1224-25 (8th Cir. 1983)).

On the cross-motions for summary judgment, the Court must determine (1) whether Plaintiff can maintain a Section 542 turnover action against Defendant; (2) whether Defendant owes Plaintiff $6,000,000.00 in tax refunds; (3) whether Defendant is "entitled" to exercise its right of offset against the tax refunds due to Plaintiff; (4) whether Defendant has the unrestricted right to offset any tax refund amounts against the $10,000,000.00 Debtors owe to Defendant under the Claim Settlement; and (5) whether Plaintiff's tax refund claims are time-barred under West Virginia law. The Court resolves the matter below.

## I. Section 542 Turnover Action

Pursuant to Section 542(a) of the Bankruptcy Code, "[e]xcept as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under Section 363 of this title, or that the debtor may exempt under Section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542(a). Pursuant to Section 542(b) of the Bankruptcy Code, "[e]xcept as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under Section 553 of this title against a claim against the debtor." 11 U.S.C. § 542(b). As part of a prima facie case, the trustee must demonstrate by clear and convincing evidence that the assets in question are part of the bankrupt's estate. *Evans v. Robbins*, 897 F.2d 966, 968 (8th Cir. 1990) citing *Maggio v. Zeitz,* 333 U.S. 56, 63-64, 68 S.Ct. 401, 405, 92 L.Ed. 476 (1948)**.**

Turnover under Section 542 is available only for property that is undeniably estate property. *Stanziale v. Pepper Hamilton, LLP (In re Student Fin. Corp.)*, 335 B.R. 539, 554 (D. Del.2005) (To

"state a claim for turnover of property under § 542, a plaintiff must allege that transfer of the property has already been avoided or that the property is otherwise the undisputed property of the bankruptcy estate."). Turnover is not permitted where a bona fide dispute exists as to ownership of the subject property. *Dershaw v. Ciardi (In re Rite Way Elec., Inc.)*, 510 B.R. 471, 484 (Bankr. E.D. Pa. 2014). Not surprisingly, turnover claims for assets which are the subject of disputed causes of action are routinely dismissed as not being ripe. *See Schlossberg v. Madeoy (In re Madeoy)*, 576 B.R. 484 (Bankr. D. Md. 2017) (citing *Pry v. Maxim Glob. Inc. (In re Maxim Truck Co. Inc.)*, 415 B.R. 346, 357 n. 4 (Bankr. S.D. Ind. 2009)). ("[T]he Trustee's remedy under § 542 for turnover ... only ripens upon a determination by the Court that the property in dispute is, in fact, property of the estate.")). *In re RedF Mktg., LLC*, 589 B.R. 534, 546 (Bankr. W.D. N.C. 2018). "Section 542 allows for the collection of debts owed to a bankruptcy estate, but it is not meant as a substitute method for resolving contractual disputes: 'It is settled law that the debtor cannot use the turnover provisions to liquidate contract disputes or otherwise demand assets whose title is in dispute.'" *Id.* (quoting *United States v. Inslaw, Inc.*, 932 F.2d 1467, 1472 (D.C. Cir. 1991)) (emphasis added). Furthermore, turnover proceedings are not to be used to liquidate disputed contract claims. *In re Chick Smith Ford, Inc.,* 46 B.R. 515, 518 (Bankr. M.D. Fla.1985). Clearly, Congress envisioned the turnover provision of Section 542, to apply to tangible property and money due to the debtor without dispute which are fully matured and payable on demand. *See United States v. Whiting Pools, Inc.,* 462 U.S. 198, 202-03, 103 S.Ct. 2309, 2312-13, 76 L.Ed.2d 515 (1983); *In re Chick Smith Ford,* 46 B.R. at 518. Therefore, a tax refund is property of the estate pursuant to 11 U.S.C. § 541 and is subject to turnover pursuant to 11 U.S.C. § 542. "It is well established that income tax refunds are property of the estate." *In re Ferns,* 232 B.R. 453 (Bankr. D. Ariz.1999) (citing *Kokoszka v. Belford,* 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974))**.** *See also, In re Goertz,* 202 B.R. 614 (Bankr. W.D. Mo.1996).

Here, the record is clear that a bona fide dispute exists between Plaintiff and Defendant regarding the purported tax refunds as tangible property of the estate. Further, the dispute turns

on whether the purported tax refunds as tangible property of the estate that can be liquidated, payable on demand, and a mature debt due to Plaintiff.  Under Section 542, turnover proceedings apply to tangible property such as purported tax refunds and money due to Plaintiff without dispute which are fully mature and payable on demand.  Therefore, a turnover action is permissible only when Defendant has possession of Plaintiff's property and Debtors claim to the purported tax refunds is undisputed. To put it differently, the purported tax refunds in Defendant's possession have been disputed by Defendant which pokes a hole into Plaintiff's position to maintain a Section 542 turnover action against Defendant. Defendant argues this dispute between Plaintiff and Defendant over the purported tax refunds is fatal to the Section 542 turnover action. This Court disagrees.

Plaintiff argues that evidence presented to this Court has met the burden of proof to establish a prima facie case and demonstrate by clear and convincing evidence that Defendant owes a debt that is property of the bankruptcy estate, matured, payable on demand, and Plaintiff has a right to the turnover of the requested property. The Court analyzes the Section 542 turnover requirements as followed:

    a.   <u>Plaintiff's Refund Claims are Property of the Bankruptcy Estate</u>

Under 11 U.S.C. § 541(a)(1), the bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). When Congress enacted Section 541 of the Bankruptcy Act of 1978, it affirmatively adopted the Supreme Court's analysis of property that was contained in *Segal v. Rochelle*:

> [T]he estate is comprised of all legal or equitable interest of the debtor in property, wherever located, as of the commencement of the case. The scope of this paragraph is broad. It includes all kinds of property, including tangible or intangible property, causes of action ...  and all other forms of property currently specified in section 70a of the Bankruptcy Act.... The result of *Segal v. Rochelle*, 382 U.S. 375 [86 S.Ct. 511, 15 L.Ed.2d 428] (1966), is followed, and *the right to a refund is property of the estate*.

I*n re Barowsky*, 946 F.2d 1516, 1518–19 (10th Cir. 1991) citing S. Rep. 95-989, 82, 1978 U.S.C.C.A.N. 5787, 5868.

"The pre-petition portion of the refund essentially represents excessive tax withholding which would have been other assets of the bankruptcy estate if the excessive withholdings had not been made." *In re Barowsky*, 946 F.2d 1516, 1518–19 (10th Cir. 1991). "Every court that has considered this issue has held that the portion of an income tax refund that is based upon the pre-petition portion of a taxable year constitutes property of the bankruptcy estate." *See In re Orndoff,* 100 B.R. 516, 518 (Bankr. E.D. Cal.1989); *In re Smith,* 77 B.R. 633, 635 (Bankr. N.D. Ohio, 1987); *In re Shults,* 28 B.R. 395, 397 (BAP 9th Cir.1983); *In re Edmonds,* 27 B.R. 468, 469 (Bankr. M.D. Tenn.1983); *In re Verill,* 17 B.R. 652, 654 (Bankr. D. Md.1982); *In re Thomas,* 14 B.R. 759, 764 (Bankr. E.D. Mich.1981); *In re Koch,* 14 B.R. 64, 66 (Bankr. D. Kan.1981); *In re Griffin,* 1 B.R. 653, 654 (Bankr. M.D. Tenn.1979).

Here, the purported tax refunds are legal and equitable tangible property of Plaintiff based on the pre-petition portion of a taxable year triggering an overpayment based on the thin seam tax rate after the severance tax rate was assessed by Defendant.  Under West Virginia Tax Procedure and Administration Act, coal severance taxes are reported and paid in the same manner as income taxes.  As stated above, "every court that has considered this issue has held that the portion of an income tax refund that is based upon the pre-petition portion of a taxable year constitutes property of the bankruptcy estate." This Court agrees that income tax refunds as legal and equitable tangible property are property of the bankruptcy estate.

      b.  <u>Plaintiff's Refund Claims are Liquidated</u>

"A claim becomes liquidated when both the amount due and the date on which it is due are fixed and certain, or when the same become definitely ascertainable by mathematical computation." *In re Estate of Lewis*, 217 W. Va. 48, 56, 614 S.E.2d 695, 703 (2005) citing *In re Matter of Midland Industries, Inc.,* 237 Kan. 867, 868, 703 P.2d 840, 842 (1985). Here, Defendant argues the purported tax refund claims are unliquidated. However, Defendant does not provide a detailed explanation supporting its contention that the tax refund claims are unliquidated—which would disqualify Plaintiff from a proper Section 542 turnover action. After reviewing the record before the

Court, the four purported tax refund claims owed to Plaintiff can be ascertainable by mathematical computation relying solely on Defendant's records and admissions pertaining to not only the amount of tax due but also the date on which the tax is due are fixed and certain.  For example, the purported tax refund claims due to Panther LLC, and Coyote Coal Company were calculated by subtracting the tax paid from the tax due which is reflected in the documents and testimony of Defendant. Therefore, this Court finds the purported tax refund claims are liquidated for purposes of a proper Section 542 turnover action.

      c. <u>Plaintiff's Refund Claims are Payable on Demand</u>

"The terms 'matured', 'payable on demand', and 'payable to order' refer to debts that are presently payable, as opposed to those that are contingent and become payable only upon the occurrence of a certain act or event." *In re Gordons Transports, Inc.*, 51 B.R. 633, 636 (Bankr. W.D. Tenn. 1985). Defendant argues that turnover proceedings apply to tangible property and money due to the debtor "without dispute" which are fully matured and payable on demand. Here, Defendant's argument rest on whether the money due is disputed and not whether the purported tax refunds would be payable on demand. The Court notes that Defendant acknowledges the purported tax refunds would be payable on demand. Therefore, any tax refunds owed to Plaintiff on behalf of Debtors would be matured and payable on demand for the purposes of a Section 542 turnover action because Debtors paid Defendant money toward their tax liability resulting in an overpayment. Thus, the overpayment entitles Plaintiff to a tax refund that is payable on demand.

      d. <u>Plaintiff's Refund Claims Dispute</u>

Section 542 turnover proceedings "apply to tangible property and money due to the debtor without dispute which are fully matured and payable on demand." *In re Charter Co.*, 913 F.2d 1575, 1579 (11th Cir. 1990). For an action to be a turnover proceeding, it is not relevant that the defendant disputes the existence of the debt by, perhaps, denying the complaint's allegations, as long as those allegations state the existence of a mature debt. *In re Nat'l Enterprises, Inc.*, 128 B.R. 956, 959 (E.D. Va. 1991).  "A dispute as to the existence of a debt is a question that can be decided

during the course of a turnover proceeding." *Gordons Transports,* 51 B.R. at 636; *In re Kids World of Am., Inc.*, 349 B.R. 152, 163 (Bankr. W.D. Ky. 2006).

Here, the fact that Defendant denies these allegations does not take Plaintiff's action outside the scope of Section 542(b). Other courts have consistently found that allegations similar to those of Plaintiff fall within the scope of Section 542(b).  *In re Rawson*, 40 B.R. 167, 169 (Bankr. N.D. Ohio 1984) citing *Georgia Pacific Corp. v. Sigma Service Corp.,* 712 F.2d 962 (5th Cir.1983); *In re Kakolewski,* 29 B.R. 572 (Bankr. W.D. Mo.1983); *In re Brame,* 26 B.R. 309 (Bankr. W.D. Ky.1982); *In re Fulghum Construction Corp.,* 23 B.R. 147 (Bankr. M.D. Tenn.1982). Defendant argues that none of the purported tax refund claims identify undisputed tangible property or a matured debt due to Plaintiff and the Section 542 turnover action must fail. This Court notes Defendant's reference to the purported tax refund claims as "disputed."  Given the available evidence within the record, this Court can make the determination regarding the specific allegations disputed by Defendant.

After reviewing Defendant's opening brief and objection, Defendant claims the dispute remains because Panther LLC and Coyote Coal Company tax refunds were never properly requested, Catenary Coal Company tax refund was previously offset, Patriot Coal Company tax refund will be offset, and all the purported tax refund claims are time-barred under West Virginia law. Plaintiff argues the reverse in relation to Defendant claims—asking this Court to determine whether Panther LLC and Coyote Coal Company tax refunds was properly requested, to determine was Catenary Coal Company refund offset, and to determine if Patriot Coal Company tax refund was subject to an offset. Simply stating a string of facts without supporting and conclusive evidence is not sufficient to defeat summary judgment.  Given the historical nature concerning Plaintiff on behalf of Debtors and Defendant regarding the purported tax refunds along with the numerous pleadings filed, there is no clear indication of the threshold for a legitimate dispute or not under the circumstances.

Lastly, regarding the Section 542 turnover action, this Court stated in its prior Order denying Defendant's Third Motion to Dismiss that "Section 106 permits this Court to hear and determine any

issue arising with respect to the application of sections specifically enumerated in Section 106(a). Section 542(a), under which the Trustee brings his complaint, is one of the sections specifically enumerated in Section 106(a)…this Court is allowed to hear and determine the issues concerning them" referring to Plaintiff's refund claims in question.

## II.  Purported Tax Refunds Owed

Under the tax code in West Virginia, coal severance taxes are reported and paid in a manner similar to income taxes. Each month, the taxpayer estimates the amount of coal it severed in the previous month, calculates an estimate of the coal severance taxes and pays the estimated amount of taxes due. *See* W. Va. Code Ann. § 11-13A-1 et seq. & W. Va. Code Ann. § 11-12-1 et seq.  At the end of the tax year, the taxpayer files an annual return showing the actual amount of severed coal, the coal severance taxes owed, and the severance taxes it previously paid during the tax year. *Id.*  The annual return shows either a tax liability—if the taxes owed exceed the payments tendered or an overpayment—if the payments made exceeded the taxes owed triggering a tax refund.   Pursuant to W. Va. Code Ann. § 11-10-14(a), "in the case of an overpayment of any tax…the Tax Commissioner shall refund to the taxpayer the amount of the overpayment or, if the taxpayer so elects, apply the same as a credit against the taxpayer's liability for the tax for other periods. The refund or credit shall include any interest due the taxpayer under W. Va. Code Ann § 11-10-17." *See* W. Va. Code Ann § 11-10-14(a).

As to claims for refund or credit, "no refund or credit shall be made unless the taxpayer has timely filed a claim for refund or credit with the Tax Commissioner. A person against whom an assessment or administrative decision has become final is not entitled to file a claim for refund or credit with the Tax Commissioner. The Tax Commissioner shall determine the taxpayer's claim and notify the taxpayer in writing of his or her determination." *See* W. Va. Code Ann. § 11-10-14(c). Further, "if the taxpayer is not satisfied with the Tax Commissioner's determination of taxpayer's claim for refund or credit, or if the Tax Commissioner has not determined the taxpayer's claim within

90 days of the claim was filed,…the taxpayer may file, with the Tax Commissioner, either personally or by certified mail, a petition for refund or credit." *See* W. Va. Code Ann. § 11-10-14(d)(1).

Here, this Court must determine whether the amount of tax paid by Debtors to Defendant for tax years from 2011 to 2014 resulted in an overpayment triggering a refund or a tax liability. The Court examines Debtors tax activity below.

a.  Catenary Coal Company

Defendant concedes in numerous pleadings filed with this Court that "on or about January 31, 2012, Catenary Coal Company filed its 2011 annual coal severance tax return;…claimed a refund of $1,219,083.43; and a month later, the Tax Department approved the refund claim." [Boyle Declaration]. To put it differently, Defendant admitted that Catenary Coal Company requested the tax refund in the amount of $1,219,083.43 on its 2011 tax return—demonstrating that Debtor knew how to properly request a tax refund. Importantly, Defendant acknowledges that Catenary Coal Company overpaid its coal severance taxes by $1,219,083.43 resulting in a tax refund. However, Defendant determined that Catenary Coal Company was not entitled to the tax refund due to outstanding taxes owed for 2007-2010 tax years, plus unpaid severance taxes for the months of January and February 2012.

Pursuant to W. Va. Code Ann. § 11-10-11(j)(1), "Whenever a taxpayer has a refund or credit due it for an overpayment…the Tax Commissioner may reduce the amount of the refund or credit by the amount of any tax administered under the West Virginia Tax Procedure and Administration Act, whether it be the same tax or any other tax, which is owed by the same taxpayer and collectible."  Here, Defendant argues that it exercised its right to offset under   W. Va. Code Ann. § 11-10-11(j)(1) the full amount of the tax refund due to Catenary Coal Company for the overpayment triggering the $1,219,083.43 plus interest refund. Defendant applied the overpayment to Catenary Coal Company's tax liability for outstanding taxes due for 2007-2010 tax years, plus unpaid coal severance taxes for the month January 2012, February 2012, and April 2012. However, Plaintiff argues that Defendant did not inform Debtors prior to the First Bankruptcy Cases

that it had offset Catenary Coal Company's refund claim despite Defendant's standard practice to notify a taxpayer that a claimed tax refund was offset. Further, Plaintiff argues that Defendant did not inform Debtors of the alleged offset during the Claim Settlement negotiations in 2013. Also, Defendant made no mention of the alleged offset in its response to the Enforcement Motion or in any of the discussions the parties had in 2014 regarding Catenary Coal Company's tax refund.

Plaintiff argues that "Catenary Coal Company appealed the Audit Assessment that was issued on December 9, 2011 to the West Virginia Office of Tax Appeals, and Defendant received a copy of that appeal on February 10, 2012—more than two weeks prior to the date on which Defendant alleges to have offset Catenary Coal Company's tax refund under W. Va. Code Ann. § 11-10-11(j)(1). This is critical because Defendant cannot exercise its offset rights unless "the amounts are owed by the same taxpayer and collectible." *Id.* Under West Virginia law, however, "amounts owed under an audit assessment are not collectible until the appeals process is complete." Ex. 22, Irby Dep. Ex. 35, Patriot_00008201-Patriot_00008226 (stating the assessment is not final if the taxpayer filed a petition for reassessment). The Court notes that Debtors filed the First Bankruptcy Cases on July 12, 2012. Since the prior taxes owed under the audit assessment remained on appeal, Debtors' bankruptcy filing would have stayed that appeal. The automatic stay in place would mean that the audit assessment amounts for the taxes owed remain uncollectible under W.Va. Code Ann. § 11-10-11(j)(1). The Court finds a dispute over Defendant's right to offset Catenary Coal Company's tax refund because of the pending appeal of the audit assessment and the automatic stay in effect after the filing of Debtors First Bankruptcy Cases. The prior taxes owed by Debtors remained on appeal until they were resolved in the Claim Settlement, further questioning Defendant's offsetting of Catenary Coal Company's tax liability against the tax refund claim. Therefore, the Court finds that a genuine dispute as to the amount of the tax refund with interest, if any, is owed to Plaintiff does exist in this case. Also, Debtors First Bankruptcy Cases stayed the audit assessment that was on appeal and consequently not collectible for Defendant to offset. Further, the prior tax liability owed by Debtors to Defendant was apparently resolved during the

Claim Settlement negotiations further challenging Defendant's ability to offset Catenary Coal Company's tax refund claim.

b. Coyote Coal Company

Coyote Coal Company filed its 2012 annual severance tax return on January 31, 2013, showing total taxes due of $4,724,501.40 and claiming a tax liability of $365,344.38  On February 25, 2013, Coyote Coal Company filed an amended 2012 annual severance tax return, showing a tax liability of $4,440,190.68.  Defendant argues that Coyote Coal Company reduced its tax liability on its amended return by $284,310.73 by "unilaterally" claiming entitlement to the thin seam tax rate. Defendant further argues that Coyote Coal Company's amended return also showed payments of estimated liability during 2012 totaling $4,096,442.10, leaving a remaining balance of $343,748.58 due in taxes. Defendant asserts Coyote Coal Company did not request either a refund or credit on its return and that Coyote Coal Company never amended its return seeking either a refund or credit in any amount, including the $284,310.73 it seeks in this adversary proceeding.

Plaintiff argues Coyote Coal Company claimed a thin seam tax rate for certain coal mines. Under the thin seam tax rate, Coyote Coal Company's tax due totaled $4,440,190.68 for twelve months of 2012. Plaintiff further argues this amount should be reduced by the May and June 2012 severance tax payments because Coyote Coal Company never paid those amounts. Those amounts were part of the Claim Settlement instead.   As Defendant concedes, Coyote Coal Company made monthly payments of $4,096,442.10 and a return payment of $365,344.28 in 2012, for a total payment of $4,461,786.48 against a tax liability of $3,711,716.44 for ten months.  The difference between the total amount paid and the total liability amounts leaves a tax refund due of $750,074.04 plus accrued interest.

Here, the issue before the Court is whether the tax refund due and payable to the Trustee is permitted because of Coyote Coal Company applying the proper severance tax rate. The Court notes the proper severance tax rate is determined by Defendant's geologist evaluation of the corporate entity's isopach maps. And, if Coyote Coal Company did not request either a refund or

credit on its return is the tax refund proper under West Virginia tax law. The Court determined Coyote Coal Company filed an initial 2012 severance tax return on January 30, 2013 utilizing the severance tax rate, which resulted in Coyote Coal Company owing taxes to Defendant.  However, Coyote Coal Company filed an amended tax return claiming the thin seam tax rate for certain coal mines, which resulted in a tax refund being due to Coyote Coal Company.

The Court examined the Irby and Hamilton depositions in the case where Defendant's geologist, in reference to evaluating the Coyote Coal Company isopach map for the thin seam tax rate determination, stated "I passed the Coyote Coal Blue Creek Mine #2 because the maps were excellent and it actually qualified. That same day, the West Virginia Tax Department geologist sent an internal email to another West Virginia Tax Department employee informing her that Coyote had provided him with the amended maps and, based upon his review, Coyote's maps are approved for both years. The new maps really are good." *See* Ex. 35, Irby Dep. Ex. 14, WVST003933 and Ex. 36, Hamilton Dep. Ex. 5, WVST003935. Defendant's geologist indicated Coyote Coal Company's isopach map was "excellent" and "approved" as evidence in the record and depositions suggest that Defendant's geologist approved the thin seam tax rate for the isopach maps Coyote Coal Company presented on their 2012 tax return. Therefore, this Court finds Defendant's assertion that Coyote Coal Company acted "unilaterally" to be in error. Defendant's geologist weighed in on the thin seam tax rate determination which resulted in the refund due to Coyote Coal Company in the amount of $750,070.04 with accrued interest. Regarding the limitation on claims for a tax refund, "the taxpayer shall file a claim for refund within three years after the due date of the return in respect of which the tax was imposed…" *See* W.Va. Code Ann. § 11-10-11(j)(1).  The dispute remains over whether Coyote Coal Company "filed a claim for refund" within three years after the due date of the tax return. In other words, the dispute remains over whether Defendant can procedurally withhold Coyote Coal Company's tax refund if a formal "claim for refund" was not filed within three years after the due date of the tax return. However, under W. Va. Code Ann. § 11-10-

11(c), "no refund shall be made unless the taxpayer has timely filed a claim for refund with the Tax Commissioner."

    c. <u>Panther LLC</u>

Panther LLC filed its initial 2012 annual coal severance tax return on January 31, 2013, showing total taxes due of $4,742,353.52 and claiming a tax liability of $268,721.16. Panther LLC made a return payment of $268,721.16. On February 25, 2013, Panther LLC filed an amended return showing a total tax due of $2,370,676.76. Defendant asserts that Panther LLC reduced its tax burden by $2,300,000.00 from the initial return by unilaterally claiming entitlement to a reduced tax rate applicable to thin coal seams. The amended tax return showed that Panther LLC had made payments of estimated taxes during 2012 which totaled $3,241,830.87. Panther LLC indicated the amended tax return resulted in an overpayment of $871,154.11. Defendant argues Panther LLC did not request on its tax return that this overpayment be refunded to it. Defendant stated that Panther LLC requested a credit for the $871,154.11 overpayment.  According to Defendant, Panther LLC has never amended its tax return with Defendant to request a refund as to any alleged overpayments, including the $2,371,176.76 alleged in this case. Defendant therefore disputes that Panther LLC has complied with W. Va. Code Ann. § 11-10-11(a) and W. Va. Code Ann. § 11-10-11(j)(1) to qualify for the tax refund.

Plaintiff is seeking $1,755,463.52 plus accrued interest for the tax refund requested by Panther LLC pertaining to its 2012 annual severance tax return. In 2013, Panther LLC filed an initial 2012 annual severance tax return that utilized the 2% thin seam tax rate.  Panther LLC subsequently filed an amended tax return that utilized a 1% thin seam tax rate, which resulted in a tax refund due to Panther LLC.  Under the amended thin seam tax rate, Panther LLC's tax due for the twelve months of 2012 was $2,370,675.75. As the case with Catenary Coal Company, the amount should be reduced by the May and June 2012 severance taxes because Panther LLC never paid those amounts as they were resolved in the Claim Settlement. Deducting the May and June 2012 severance taxes from the total amount due of $2,370,675.75 yields a ten-month tax due of

$1,755,046.85. The difference between the total amount of tax paid and the tax liability equals a tax refund due to Panther LLC of $1,755,463.52 plus accrued interest.

Similarly, to the issue with Coyote Coal Company tax refund, the issue for the Court to decide is whether the tax refund due and payable to Plaintiff rest on whether Panther LLC applied the proper severance tax rate. As with Coyote Coal Company, Defendant's geologist makes the final determination of the proper severance tax rate.  During the Irby deposition, Defendant's geologist reported, after visiting Panther LLC's mine, to Defendant that, "I had previously suggested WVDTR rejection of Panther LLC's Severance Return based on vague geological descriptions of the bottommost mined layer and whether, or not this layer should be included as coal. Upon inspection it was decided that this bottommost layer of the Eagle Seam should be excluded from the measurement required for successful qualification as Thin Seam. Therefore, Panther LLC's request for Thin Seam Reduced Rates of [1%] should be accepted as submitted." *See* Ex. 46, Irby Dep. Ex. 30, Patriot_00008424.  Here, the Court determines that Defendant's geologist ultimately decided that Panther LLC's 1% thin seam tax rate should be accepted and submitted triggering a tax refund of $1,755,463.52 plus accrued interest.  Further, Defendant admits that Panther LLC had an overpayment, but the actual amount is in dispute. Also, Defendant alleges that Panther LLC requested a "credit" of the overpayment and not a "refund" of the overpayment. The Court finds that an overpayment whether a credit or refund suggest that Panther LLC is entitled to a payment in excess of what is due under W.Va. Code Ann. § 11-10-11(a). However, the remaining dispute is whether Panther LLC as the taxpayer elected a tax credit or a tax refund with accrued interest for the overpayment.

d.  <u>Patriot Coal Company</u>

In September 2014, Patriot Coal Company filed a 2013 business franchise tax return. On the return, Patriot Coal Company claimed a tax refund in the amount of $439,939.00 and a tax

credit of $20,000.00. *See* Ex. 47, Hartsog Dep. Ex. E, PATRIOT_00007775. Defendant admits

Patriot Coal Company properly requested a refund on their tax return filed in 2014. Plaintiff further

asserts that Defendant does not dispute the validity of Patriot Coal Company's tax refund. For

example, Defendant admits that Patriot Coal Company never used the $20,000.00 tax credit and

the total amount of the tax refund claimed is $439,939.00.  However, Defendant also admits that

it has not issued the claimed refund because Patriot Coal Company owes Defendant

$10,000,000.00 under the Claim Settlement. Therefore, pursuant to W. Va. Code Ann. § 11-10-

11(j)(1) Defendant argues that it has a right to offset the tax refund amount of $439,939.00 to satisfy

Patriot Coal Company's outstanding debt of $10,000.000.00. Also, Defendant argues neither

Plaintiff nor Patriot Coal Company has ever filed a petition under W. Va. Code Ann. § 11-10-14(d)

with the Office of Tax Appeals challenging Defendant's right to offset. But for Defendant's right to

offset, the Court determines that Patriot Coal Company was due a tax refund in the amount of

$439,939.00 plus accrued interest. The dispute is whether Defendant has the right to offset Patriot

Coal Company's tax refund that would be due and payable to Plaintiff. Under the circumstances,

the Court analyzes Defendant's right to offset tax refunds below in Part III of the Conclusions of

Law.

### III.  The Right to Offset Tax Refunds

On the issue of the State of West Virginia's right to offset tax refunds owed to a taxpayer,

W. Va. Code Ann. § 11-10-11(j)(1) states, "Whenever a taxpayer has a refund or credit due it for

an overpayment or any tax administered under the West Virginia Tax Procedure and Administration

Act, the Tax Commissioner may reduce the amount of the refund or credit by the amount of any tax

administered under this article, whether it be the same tax or any other tax, which is owe by the

same taxpayer and collectible as provided in subsection (a) of this section." In *U.S. on Behalf of the

Internal Revenue Service v. Norton*, the appellate court for the third circuit concluded "that the

courts below were correct in looking to state law to determine when a setoff has occurred." 717

F.2d 767, 772 (3d Cir. 1983).  Under Pennsylvania law, the retention of a debtor's funds by a

creditor provides sufficient evidence of an intent to setoff. *Pittsburgh National Bank v. United States,* 657 F.2d 36 (3d Cir.1981). The Government, on behalf of the Internal Revenue Service, may be correct in arguing that a national policy should govern IRS setoff rights, but that argument must be addressed to Congress. *U.S. on Behalf of the Internal Revenue Service v. Norton* at 772. "Nothing in the Bankruptcy Code or its legislative history indicates that Congress intended 'a special exception for the tax collector' to the general principles governing section 553." *U.S. v. Norton*, 772-773 citing *United States v. Whiting Pools, Inc.,* ___ U.S. ___, ___, 103 S.Ct. 2309, 2316, 76 L.Ed.2d 515 (1983). Courts already prohibited banks from setting off debts against a corporate account during the pendency of a reorganization proceeding, unless those banks first request and receive relief from the automatic stay in a bankruptcy court. *U.S. on Behalf of the Internal Revenue Service v. Norton* at 773 citing *In Re Penn Central Transportation Co.,* 453 F.2d 520 (3d Cir.1972). "Without the automatic stay of setoff rights during reorganization, the Court reasoned, the loss of bank accounts and of accounts receivable would probably prove fatal to many otherwise viable businesses. If a bank could freeze the debtor's accounts upon the filing of a petition in bankruptcy, the debtor's chances for successful rehabilitation would be substantially diminished." *U.S. on Behalf of the Internal Revenue Service v. Norton*, 717 F.2d 767, 772–73 (3d Cir. 1983).

Additionally, "Section 553 of the Bankruptcy Code preserves the right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case....11 U.S.C. § 553. The application of setoff, however, is permissive and lies within the equitable discretion of the trial court. *I.R.S. v. Norton,* 717 F.2d 767, 772 (3d Cir.1983); *In re Davies,* 27 B.R. 898, 901 (Bankr. E.D.N.Y. 1983). The intent of the statute is clear that one creditor should not be unfairly favored over the class of creditors and, when justice dictates, setoff must be denied. According to the Code the right of setoff is limited and unavailable if: (3) the debt owed to the debtor by such creditor was incurred by such creditor—(A) after 90 days before the date of the filing of the petition; (B) while the debtor was insolvent; and (C) for the

purpose of obtaining a right of setoff against the debtor. 11 U.S.C. § 553(a)(3)." *In re S. Indus. Banking Corp.*, 809 F.2d 329, 332 (6th Cir. 1987).

Here, Defendant argues that the State of West Virginia has the right to offset each of the alleged tax refunds against the $10,000,000.00 outstanding and unpaid under the Settlement Agreement, which the $10,000,000.00 was neither released under the Settlement Agreement nor discharged in either of Patriot's two bankruptcy proceedings. Plaintiff argues that Defendant did not have a principled basis for refusing to pay Debtors' tax refunds. Further, Plaintiff argues the tax refunds were not released by the Claim Settlement. The issue at hand is whether Defendant can offset Debtors' tax refunds against the $10,000,000.00 that is due to the State of West Virginia. While the Court agrees that the Tax Commissioner may reduce the amount of the refund or credit by the amount of any tax due as a result of an overpayment, the difference here is that the taxpayer is an "insolvent" taxpayer who filed for Chapter 11 bankruptcy protection in their First Bankruptcy Cases. For Defendant to retain Debtors' tax refunds after five years provide sufficient evidence of Defendant's intent to setoff. As the United States Supreme Court reasoned in *United States v. Whiting Pools, Inc.*, nothing in the Bankruptcy Code or its legislative history indicates that Congress intended "a special exception for the tax collector" to the general principles governing Section 553. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 199, 103 S.Ct. 2309, 2310, 76 L.Ed. 515 (1983). As the Court determined in *U.S. on Behalf of I.R.S. v. Norton*, banks are prohibited from setting off debts against a corporate account during the pendency of a reorganization proceeding, unless those banks first request and receive relief from the automatic stay in a bankruptcy court. Similarly, Defendant should be prohibited from offsetting Debtors' tax refunds against Debtors' account during the pendency of the reorganization proceeding before requesting relief from the automatic stay from this Court. According to 11 U.S.C. § 553(a)(3), the right of setoff is limited and unavailable if the debt owed to the debtor by such creditor was incurred by such creditor after 90 days before the date of the filing of the petition; while the debtor was insolvent; and for the purpose of obtaining a right of setoff against the debtor. This Court finds the $10,000,000.00 debt alleged by Defendant

to be owed by Debtors was established as a result of the Settlement Agreement post-bankruptcy petition of the First Bankruptcy Cases, Debtors were insolvent, and Defendant asserts the right to setoff the $10,000,000.00 debt against Debtors' tax refunds. Therefore, this Court concludes that Defendant does not have the right to offset Debtors' tax refunds against a post-petition debt that was established after the filing of the First Bankruptcy Cases and during the pendency of Debtors reorganization who has the protection of the automatic stay. In order for Defendant to offset any debts during Debtors' bankruptcy proceedings would have required Defendant seek relief from the automatic stay from this Court to pursue such enforcement action.  The Court finds that Defendant did not make this request.

## IV. Claim Settlement Terms

On November 4, 2013, Patriot Coal Company and the State of West Virginia settled proofs of claim in the amount of $13,5000,00.00, comprised of a $7,000,000.00 priority claim and a $6,500,000.00 general unsecured claim. *See* Hartsog Dep. 61:17-22; Hartsog Dep. Ex. O. The Settlement Agreement states the following:

> Allowed Claims. Pursuant to section 1129(a)(9) of the Bankruptcy Code and the Claims Settlement Procedures Order, in full and final satisfaction of the Claim, the Parties agree that [the State] is allowed certain claims against the Settled Debtor(s) entity or entities and in the amount(s) and classification set forth in Exhibit B attached hereto (collectively, the "Allowed Claim"). The total priority Allowed Claim in the aggregate amount of $7 million set forth on Exhibit B hereto shall be paid as follows: (i) $3.5 million in cash on or before the latter of June 15, 2014 … and (ii) $3.5 million in cash on or before the latter of June 15, 2015 … The total unsecured Allowed Claim in the aggregate amount of $6.5 million … shall be paid in accordance with the Debtors' plan of reorganization. It is expressly understood by the Parties that [the State] may seek satisfaction of the Claim only as set forth herein, and that in no event will the Debtors, their estates or any persons who are employed or otherwise associated with the Debtors be liable to the [State] in any other way whatsoever with respect to the Claim or the debt, obligation, liability, account, suit, damages or cause of action giving rise to the Claim.

(Hartsog Dep. Ex. O at 2).

Under Section 4 of the Settlement Agreement, Defendant agreed to release the Patriot Debtors as follows: "Except as expressly agreed herein, [the State] does hereby fully, finally,

and forever waive, release and/or discharge the [Debtors] from all actions, causes of actions, suits, debts, obligations, liabilities, accounts, damages, defenses or demands whatsoever, known or unknown, giving rise to or otherwise relating to the Claim." Notwithstanding the express language of the Claim Settlement terms, Defendant argues that "nowhere in the Settlement Agreement did the State agree to release prospectively any claims or defenses that might arise in the future or as to the amounts owing under the Settlement Agreement." The Court notes the Settlement Agreement establishes that Defendant "fully, finally, and forever released all causes of action relating to the Claim." The terms "fully, finally, and forever released all causes of action relating to Claim" amounts due under the Settlement, which proves the State agreed to release prospectively any claims or defenses that might arise in the future and is related to the Claim Settlement.

Defendant further agues that it did not waive any offset rights of the amounts owing under the Claim Settlement. Defendant asserts the confirmation orders in each of Patriot's successive Chapter 11 cases expressly preserved Defendant's offset rights. The confirmation order entered in these former Chapter 11 cases provided as follows:

> Nothing in the Plan or this Confirmation Order releases, discharges, precludes, exculpates, or enjoins the enforcement of . . . any valid right of setoff or recoupment by any Governmental Unit . . . [or] shall enjoin or otherwise bar any Governmental Unit from asserting or enforcing, outside this Court, any [such] liability…

(Doc. 5169 at **40-41 at ¶ 71).

According to Defendant, the confirmation order entered in Debtors' bankruptcy cases fully preserved Defendant's offset rights and recoupment. Also, Defendant pointed out that the confirmation order in Patriot's second set of bankruptcy proceedings contains a substantially similar provision. *See In re Patriot Coal Corp.*, Case No. 15-32450-KLP (Bankr. E.D. Va., Oct. 9, 2015) ([ECF Doc 1615] at *59-61, ¶ 154.a.(1)(viii) & b). Here, even if the Claim Settlement does not prohibit Defendant's right to setoff claims due under the agreement, the bankruptcy code upholds a mutuality requirement for a valid setoff action. With respect to the requirement that the debts be

mutual, generally, mutual debts are "due to and from the same person in the same capacity." *In re Sentinel Prods. Corp., P.I., Inc.,* 192 B.R. 41, 45 (N.D.N.Y.1996) (quoting *Modern Settings Inc. v. Prudential–Bache Sec., Inc.,* 936 F.2d 640, 648 (2d Cir.1991)) (citations omitted)). Moreover, mutuality is strictly construed against the party seeking setoff. *In re Sentinel Prods. Corp.,* 192 B.R. at 45 (citing *In re Westchester Structures, Inc.,* 181 B.R. at 739). *In re Bennett Funding Grp.*, Inc., 212 B.R. 206, 212 (B.A.P. 2d Cir. 1997), *aff'd*, 146 F.3d 136 (2d Cir. 1998). Defendant may setoff the amounts due under the Claim Settlement if the debts are (1) between the same persons; (2) for the same type of claims; and (3) pre-petition debts.  Here, the Court finds that the debts due under the Claim Settlement are between fifteen Patriot entities and not only the four entities seeking tax refunds, that different type of claims—tax refunds and breach of contract claims are at issue, which are not of the same type, and Defendant is attempting to offset post-petition debts as demonstrated by Patriot's failure to make payments due under the Claim Settlement.

While the confirmation order stated that "nothing in the Plan or this Confirmation Order releases, discharges, precludes, exculpates, or enjoins the enforcement of . . . any valid right of setoff or recoupment by any Governmental Unit . . . [or] shall enjoin or otherwise bar any Governmental Unit from asserting or enforcing, outside this Court," the key distinction for this Court is whether Defendant as a Governmental Unit engaged in a "valid right of setoff or recoupment" against the taxpayer as Debtors in their First Bankruptcy Cases and Second Bankruptcy Cases. For the reasons stated above, the Court determines that Defendant does not have a valid right of setoff for non-mutual, post-petition debts that are not of the same type of taxpayer or claims.

## V.  Time-Barred Tax Refund Claims

Under the West Virginia Tax Procedure and Administration Act, there are specific rules for a taxpayer to timely file a claim for a tax refund.  More specifically, under Section 11-10-14(c), "[n]o refund or credit shall be made unless the taxpayer has timely filed a claim for refund or credit with the Tax Commissioner." *See* W. VA. Code § 11-10-14(c).  Section 11-10-14(l)(1) defines what constitutes a timely filed request as followed:

(1)     Limitation on claims for refund or credit.

(2)     General rule. — Whenever a taxpayer claims to be entitled to a refund or credit of any tax (or fee), additions to tax, penalties or interest imposed by this article, or any article of this chapter, or of this code, administered under this   article, paid into the treasury of this state, the taxpayer shall, except as provided in subsection (d) of this section, file a claim for refund, or credit, within three years after the due date of the return in respect of which the tax (or fee) was imposed, determined by including any authorized extension of time for filing the return, or within two years from the date the tax (or fee) was paid, whichever of the periods expires the later, or if no return was filed by the taxpayer, within two years from the time the tax (or fee) was paid, and not thereafter.

*See* W. Va. Code Ann. § 11-10-14(l)(1).

Next, Section 11-10-14(d) outlines the procedural limitations for a taxpayer to challenge a decision reached by the Tax Commissioner as to the taxpayer's timely filed request:

(1)     If the taxpayer is not satisfied with the Tax Commissioner's determination of taxpayer's claim for refund or credit, or if the Tax Commissioner has not determined the taxpayer's claim within 90 days after the claim was filed, … the taxpayer may file, with the Tax Commissioner, either personally or by certified mail, a petition for refund or credit: Provided, That no petition for refund or credit may be filed more than 60 days after the taxpayer is served with notice of denial of taxpayer's claim: Provided, however, that after December 31, 2002, the taxpayer shall file the petition with the Office of Tax Appeals in accordance with §11-10A-9 of this code.

*See* W.Va. Code Ann. § 11-10-14(d).

Here, Defendant argues that Plaintiff, nor Debtors have complied with the statutorily mandated requirements by either filing a timely refund request or challenging Defendant's decision regarding the same. The Court notes Defendant's position that Panther LLC and Coyote Coal Company never filed a return requesting a refund in any amount. However, Plaintiff argues that Panther LLC did request a credit on its 2012 annual return. Plaintiff further highlights a response made during the Irby deposition that "a taxpayer that initially elects to receive a credit can subsequently request a refund."  *See* Ex. 3, Irby Dep. 43:6-8. As to Coyote Coal Company, its 2012 amended return was filed on February 25, 2013, and

the annual return payment that was satisfied on January 30, 2013 demonstrated that Coyote Coal Company overpaid taxes in 2012 resulting in a tax refund. The Court finds a dispute between what constitutes a sufficient filing for a tax refund to be released from Defendant. Defendant concedes that Panther LLC and Coyote Coal Company filed their 2012 amended tax return on February 25, 2013, which triggered an overpayment. However, Defendant argues that because a request for a refund was not elected within three years from the due date of their tax returns under W.Va. Code Ann. § 11-10-14(l)(1) that a timely refund request was not made but those claims are time barred. The Court understands that Plaintiff elected to receive a credit instead of a tax refund initially. But, the question remains whether Plaintiff filed a subsequent request before February 25, 2016 to amend their original request for a credit to a refund after having knowledge of the discrepancy.

As for Catenary Coal Company, Defendant argues that it applied Catenary Coal Company's tax refund amount to other outstanding taxes in February 2012 and April 2012. Further, Defendant argues that under Section 11-10-14(d), Catenary Coal Company had 60 days thereafter to petition Defendant's decision to setoff their tax refund, but Catenary Coal Company never filed such a petition. Catenary Coal Company requested a tax refund of $1,219,083.45 on its 2011 annual severance tax return filed in January 2012.  According to Plaintiff, Defendant approved the tax refund claim as due and owing in February 2012. *See* Ex. 3, Irby Dep. 24:10. Further, Plaintiff indicated that Defendant never informed Catenary Coal Company of the February 2012 offset until April 2015. *See* Ex. Irby. Dep. 121:18-21. However, Defendant states that Defendant provided Patriot Coal and Catenary Coal Company with a spreadsheet on August 23, 2015 showing the specific allocation of Catenary Coal Company's 2011 refund among the various taxes owed to Defendant. Plaintiff counters by arguing Catenary Coal Company appealed the December 11, 2011 Audit Notice of Assessment and Defendant received notice of this appeal on February 10, 2012—which was ongoing at the time Patriot filed its First Bankruptcy Cases on July 9, 2012.  Despite Plaintiff

arguing that Defendant approved the refund claim as due and owing in February 2012, Defendant counters with "no dispute exists that Patriot Coal knew the State had denied Catenary Coal Company refund claim by September 14, 2014." The Court notes that a dispute over the approval of the tax refund exist between Defendant and Plaintiff.  But even if Defendant approved the tax refund due and owing to Catenary Coal Company, Defendant never disclosed the offsets until April 2015, which is more than three years after the offsets allegedly occurred. *See* Ex. 3, Irby Dep. 121:18-21.

The Claim Settlement resolved the December 11, 2011 Audit Notice of Assessment claims that formed the basis of the offset by looking at the plain meaning of the agreement that stated the Claim Settlement "resolved all claims and demands asserted against Patriot Coal by the West Virginia Tax Department, including, without limitation, those asserted in the Proof of Clam." *See* Ex. 6, PATRIOT_00005756. (Scope of Agreement and Release). In order for Defendant to exercise its offset rights, the tax amounts must be owed by the same taxpayer and collectible under W. Va. Code Ann. § 11-10-14(a) and W. Va. Code Ann. § 11-10-14(j)(1). As affirmed during the Irby deposition in relation to the West Virginia Tax Procedure and Administration Act, "a tax assessment is not final if the taxpayer files a petition for reassessment." *See* Ex. 22, Irby Dep. Ex. 35, PATRIOT_00008201, at PATIOT_0008226. To say it differently, amounts due and owing under an audit assessment appeal are not collectible and therefore not final for the purpose of tax refund claims being time barred for not meeting the three-year period to satisfy the statutory limitations. The Court notes Defendant's position that Catenary Coal Company failed to petition the Office of Tax Appeals as to Defendant's actions. However, the Court points to the terms of the Claim Settlement which resolved all claims and demands asserted against Patriot Coal by Defendant, the exact moment when Defendant gave Catenary Coal Company notice of its denial of the tax refund, and the fact that the appeal stayed Defendant's right to offset as the amount due and owing

was not collectible nor final. Therefore, the Court determines that the tax refund claim as to Catenary Coal Company is not time barred.

Similarly, Defendant argues Patriot Coal has never petitioned Defendant's decision to apply its 2013 refund of $439,939.00 against the $10,000,000.00 debt owed to Defendant. Defendant does not dispute the validity of Patriot Coal's claimed tax refund of $439,939.00 as a result of their business franchise tax return for 2013 in September 2014. Under Section 11-10-14(d), "if the taxpayer is not satisfied with the Tax Commissioner's determination of taxpayer's claim for refund or credit, or if the Tax Commissioner has not determined the taxpayer's claim within 90 days after the claim was filed, … the taxpayer may file, with the Tax Commissioner, either personally or by certified mail, a petition for refund or credit…" In the present case, the Court questions whether Defendant communicated its decision to apply its 2013 tax refund of $439,939.00 against the $10,000.00.00 debt owed to Defendant directly to Patriot Coal and what recourse was provided to the taxpayer if Patriot Coal was not satisfied with the Tax Commissioner's determination of Patriot Coal's tax refund claim. Direct evidence from Defendant on this issue would assist the Court with resolving the dispute. As of now, several issues of dispute remain, and a trial proceeding would unravel the gaps that the numerous pleadings filed before this Court did not fill.

In viewing the facts in the light most favorable to Plaintiff and Defendant in these cross-motions for summary judgment, the Court finds there are genuine issues of material fact that are sufficient grounds for a trial on the issues.  Therefore,

**IT IS ORDERED THAT** Defendant West Virginia State Tax Department's Motion for Summary Judgment is **DENIED**; and

**IT IS FURTHER ORDERED THAT** Plaintiff Eugene Davis' Motion for Summary Judgment is **DENIED**.

_Kathy A. Surratt-States_

DATED:  August 11, 2021                         KATHY A. SURRATT-STATES
St. Louis, Missouri                                 Chief United States Bankruptcy Judge

Copies to:

Office of the United States Trustee
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Suite 6.353
St. Louis, MO 63102

Eugene Davis solely in his capacity as
Liquidating Trustee for the PCC
c/o Robert E. Eggmann
Carmody MacDonald P.C.
120 S. Central Avenue, Suite 1800
Clayton, MO 63105

Robert E. Eggmann
Carmody MacDonald P.C.
120 South Central Avenue, Suite 1800
Clayton, MO 63105

Michael Finnegan LeFevour
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654

Jeffrey R Baron
Bailey & Glasser
34 N. Gore Avenue, Suite 102
Webster Groves, MO 63119

Kevin W. Barrett
Bailey & Glasser LLP
209 Capitol Street
Charleston, WV 25301

Kristin Boggs
Bailey & Glasser, LLP
209 Capitol Street
Charleston, WV 25301

Maggie B. Burrus
Bailey & Glasser, LLP
209 Capitol Street
Charleston, WV 25301